**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO:**

TIMBREL NEWTON, on behalf of herself
and all others similarly situated,

      Plaintiff(s),

      v.

P.D.K.N. HOLDINGS, LLC,
P.D.K.N. P-4, LLC,
P.D.K.N. P-4, OP., LLC,

      Defendants.

_____/

**COLLECTIVE/CLASS ACTION COMPLAINT FOR DAMAGES**
**AND DEMAND FOR JURY TRIAL**

      Plaintiff, TIMBREL NEWTON ("Plaintiff" or "Ms. Newton") on behalf of herself and all

others similarly situated, and pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, and Fla. Const.

Art. X Section 24, hereby files this Collective/Class Action Complaint for Damages and Demand

for Jury Trial against Defendants, P.D.K.N. HOLDINGS, LLC, P.D.K.N. P-4, LLC, and P.D.K.N.

P-4, OP., LLC (collectively "Defendants") for their failure to pay federal and state minimum wages

and federal overtime wages for certain hours worked, as follows:

**INTRODUCTION**

1.   Defendants operate a popular waterfront restaurant and bar in Fort Lauderdale, Florida.

     This action has been filed to cure and correct Defendants' unlawful pay policies which

     have triggered federal and state wage violations over the course of the past five (5) years.

     Defendants' unlawful wage and hour practices have stripped hundreds of front-of-the-

     house restaurant Servers and Bartenders of minimum and overtime wages at Bokamper's

restaurant located at 3115 NE 32nd Ave, Fort Lauderdale, FL 33308.  Defendants have violated the minimum wage requirements under federal and Florida law because they paid all restaurant Servers the reduced "tip credit" wage for all hours worked during a shift even though Servers are required to spend more than 20% of their shifts performing non-tipped duties and responsibilities.  In addition, Defendants failed to pay Plaintiff, and similarly situated individuals, the appropriate overtime wages when Plaintiff and the putative class worked more than forty (40) hours in a week.

**PARTIES**

2. During all times material hereto, Plaintiff was a resident of Broward County, Florida, over the age of 18 years, and otherwise *sui juris.*

3. Plaintiff and the putative class members that are owed *federal minimum wages* are/were restaurant Servers who worked for Defendants at 3115 NE 32nd Ave, Fort Lauderdale, FL 33308 within the last three (3) years.

4. Plaintiff and the putative class members entitled to *federal minimum wages* worked for Defendants in the same or similar capacity as Plaintiff in that they had similar duties as Plaintiff and worked as a Server during the past three (3) years.

5. Plaintiff and the putative class members that are owed *Florida minimum wages* are/were restaurant Servers who worked for Defendants at 3115 NE 32nd Ave, Fort Lauderdale, FL 33308 within the last five (5) years.

6. Plaintiff and the putative class members entitled to *Florida minimum wages* worked for Defendants in the same or similar capacity as Plaintiff in that they had similar duties as Plaintiff and worked a Server within the past five (5) years.

7.  Plaintiff and the putative class members that are owed *federal overtime wages* are/were front-of-the-house Servers and Bartenders who worked for Defendants at 3115 NE 32nd Ave, Fort Lauderdale, FL 33308 within the last three (3) years.

8.  Plaintiff and the putative class members entitled to *federal overtime wages* worked for Defendants in the same or similar capacity as Plaintiff in that they had similar duties and Plaintiff and worked as a front-of-the-house Server or Bartender within the past three (3) years.

9.  Plaintiff worked for Defendants as restaurant Server from around March 2019 until around March 20, 2020.

10. During all times material hereto, Defendants, P.D.K.N. HOLDINGS, LLC, P.D.K.N. P-4, LLC, and P.D.K.N. P-4, OP., LLC were Florida limited liability companies operating and transacting business within Broward County, Florida, within the jurisdiction of this Honorable Court.

11. Defendants P.D.K.N. P-4, LLC, and P.D.K.N. P-4, OP., LLC collectively operate under the fictitious name "Bokampers Sports Bar & Grill" which is subject to the daily oversight, management, and control of P.D.K.N. HOLDINGS, LLC d/b/a "PDKN Restaurant Group" within the state of Florida.  A true and accurate copy of the logo used by Defendants is below:



12. During all times material hereto, Defendants were jointly and collectively vested with decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices as they apply to Plaintiff and all putative class members.

13. Plaintiff and the proposed class members were subjected to similar violations of federal law.  Plaintiff seeks recovery of federal minimum wages under 29 U.S.C. § 216(b) for herself and the following two (2) classes because of Defendants' failure to pay federally mandated minimum wages:

> **Federal Minimum Wage "Lunch Shift" Class: All restaurant Servers who worked lunch shifts for Defendants at the Bokamper's located at 3115 NE 32nd Ave in Fort Lauderdale, Florida during the three (3) years preceding this lawsuit, and were required to spend more than 20% of their lunch shifts performing "non-tipped" incidental duties and did not receive the full applicable federal minimum wage for this work.**

> **Federal Minimum Wage "Dinner Shift" Class: All restaurant Servers who worked dinner shifts for Defendants at the Bokamper's restaurant located at 3115 NE 32nd Ave in Fort Lauderdale, Florida during the three (3) years preceding this lawsuit, and were required to spend more than 20% of their dinner shifts performing "non-tipped" incidental duties and did not receive the full applicable federal minimum wage for this work.**

14. Plaintiff additionally seeks certification under Fed. R. Civ. P. 23 of the following two (2) classes for Defendants' failure to pay Florida minimum wages pursuant to the Florida Minimum Wage Act ("FMWA") and Fla. Const. Art. X Section 24:

> **Florida Minimum Wage "Lunch Shift" Class: All restaurant Servers who worked lunch shifts for Defendants at the Bokamper's restaurant located at 3115 NE 32nd Ave in Fort Lauderdale, Florida during the five (5) years preceding this lawsuit, and were required to spend more than 20% of their lunch shifts performing "non-tipped" incidental duties and did not receive the full applicable Florida minimum wage for this work.**

4

> **Florida Minimum Wage "Dinner Shift" Class: All restaurant Servers who worked dinner shifts for Defendants at the Bokamper's restaurant located at 3115 NE 32nd Ave in Fort Lauderdale, Florida during the five (5) years preceding this lawsuit, and were required to spend more than 20% of their dinner shifts performing "non-tipped" incidental duties and did not receive the full applicable Florida minimum wage for this work.**

15. Plaintiff seeks certification under 29 U.S.C. § 216(b) for herself and the following class because of Defendants' failure to pay federally mandated overtime wages:

> **Federal Overtime Class: All front-of-the-house Restaurant Servers *and* Bartenders who worked for Defendants at the Bokampers Sports Bar & Grill located at 3115 NE 32nd Ave, Fort Lauderdale, FL 33308 during the three (3) years preceding this lawsuit, and who were not paid federally mandated overtime wages when they worked in excess of forty (40) hours per week.**

16. The precise size and identity of each class is ascertainable from Defendants' business records, tax records, and/or employee or personnel records; however, Plaintiff estimates that the total number of class members entitled to *federal minimum wages* exceeds forty (40) Servers.  Plaintiff estimates that the total number of class members entitled to *federal overtime wages* exceeds forty (40) Servers and Bartenders.[1]

17. Plaintiff estimates that the total number of class members entitled to *Florida minimum wages* exceeds forty (40) servers.[2]

---

[1] On information and belief, Defendants employ an average of roughly 35 restaurant Servers and Bartenders at any given time in their Fort Lauderdale location.  Given the turnover rate of employees in the restaurant industry, it is entirely reasonable to infer that Defendants have employed at least 50-75 Servers and Bartenders annually in each of the past three (3) years prior to the filing of this lawsuit.

[2] Because Defendants employ an average of roughly 50-75 Servers and Bartenders annually, it is reasonable to infer that Defendants have employed over 375 during the five (5) years prior to the filing of this lawsuit.

18. Plaintiff and all similarly situated workers were Defendants' employees at their restaurant located at 3115 NE 32nd Ave, Fort Lauderdale, FL 33308 during all times pertinent to this complaint.

19. Defendant, P.D.K.N. HOLDINGS, LLC was Plaintiffs' employer, as defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.

20. Defendant, P.D.K.N. P-4, LLC was Plaintiffs' employer, as defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.

21. Defendant, P.D.K.N. P-4, OP., LLC was Plaintiffs' employer, as defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.

## JURISDICTION AND VENUE

22. This action is brought under 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, the Florida Constitution, Article X Section 24, and the Florida Minimum Wage Act ("FMWA") to recover unliquidated damages, liquidated damages, reasonable attorney's fees and costs from Defendants.

23. This Honorable Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

24. The acts and omissions giving rise to Plaintiffs' claims took place within Broward County, Florida, which falls within the jurisdiction of this Honorable Court.

25. Defendants regularly transact business in Broward County, Florida, and jurisdiction and venue are therefore proper.

## FLSA COVERAGE

26. Defendants, P.D.K.N. HOLDINGS, LLC, P.D.K.N. P-4, LLC, and P.D.K.N. P-4, OP., LLC are each enterprises covered by the Fair Labor Standards Act ("FLSA") by virtue of

the fact that they are each engaged in commerce or in the production of goods for commerce, in that Defendants each had at least two employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

27. Defendants' employees handled goods such as napkins, silverware, appliances, food items, credit cards, debit cards, restaurant equipment, pens, chairs, tables, plates, silverware, vacuum cleaners, cleaning materials, steaks, seafood, shrimp, fish, chicken, menus, and other materials that have previously travelled through interstate commerce.

28. Defendants each had gross annual revenues in excess of $500,000.00 in 2015, 2016, 2017, 2018, 2019, and are expected to gross in excess of $500,000.00 in 2020.

## JOINT ENTERPRISE COVERAGE

29. The Corporate Defendants each have the same registered agent, the same principal address, and the same mailing address within the State of Florida.

30. Defendants, P.D.K.N. P-4, LLC, and P.D.K.N. P-4, OP., LLC share the same parent company, P.D.K.N. HOLDINGS, LLC.

31. P.D.K.N. HOLDINGS, LLC provides P.D.K.N. P-4, LLC, and P.D.K.N. P-4, OP., LLC human resources oversight, benefits programs, equipment, and resources in an effort to successfully maximize financial profits for each of the entities.

32. On information and belief, P.D.K.N. P-4, LLC owns or leases the land on which the subject Bokamper's restaurant is located and P.D.K.N. P-4, OP., LLC compensates employees who work for the Defendants at this location.

33. Defendants perform related activities in that they all advertise the Bokamper's restaurant on the same website. *See* https://bokampers.com/fort-lauderdale (last visited August 20,

2020). During all time periods relevant hereto, Defendants held themselves out as the owner of Bokamper's and provided restaurant services to patrons in South Florida under the name Bokamper's and conducted the same business at the same location.

34. Furthermore, Defendants post job opportunities for all of their locations on the same webpage.  *See* https://bokampers.com/fort-lauderdale (last visited August 20, 2020).

35. Defendant, P.D.K.N. HOLDINGS, LLC exerts significant influence over the employment, payroll, and operational decisions made by Defendants, P.D.K.N. P-4, LLC, and P.D.K.N. P-4, OP., LLC.

36. Defendants operate together for a common business purpose through unified operation and/or common control.

37. In furtherance of their common business purpose, Defendants each contributed valuable resources that were necessary to the successful operation of the restaurant such as property, payroll services, and supervision of employees.

38. Defendants are each other's alter-egos and should be treated as the same corporate entity for the purposes of this lawsuit.

39. Defendants, collectively, grossed in excess of $500,000.00 annually in 2015, 2016, 2017, 2018, 2019, and are expected to do so in 2020.

## **GENERAL ALLEGATIONS**

40. Defendant, P.D.K.N. Holdings LLC, operates at least seven (7) different Bokamper's restaurants throughout the State of Florida, including the Bokamper's restaurant located at 3115 32nd Ave. in Fort Lauderdale, Florida (hereinafter "the Fort Lauderdale location"). Below are true and accurate photographs of the Fort Lauderdale waterfront location:





41. Plaintiff was hired by Defendants in approximately March 2019 as a restaurant Server at the Fort Lauderdale location.

42. Defendants employed other restaurant Servers and Bartenders at the Fort Lauderdale location during the past five (5) years.

43. Defendants are open to the public seven (7) calendar days a week.

44. Defendants are typically open to the public from 11:30 a.m. through 12:00 a.m. each day of the week.

## COMPENSATION DURING THE TRAINING PERIOD

45. After being hired as a Server in March 2019, Plaintiff was required to complete a training period at the Fort Lauderdale location.  Defendants require this training period is for all new Servers and Bartenders after they are hired.

46. During this training period, Plaintiff and putative class members learned the restaurant's policies and the duties and responsibilities required of Servers and Bartenders at the Fort Lauderdale location.

47. On information and belief, during the training period Plaintiff and the putative class members comprised of Servers and Bartenders were paid at the applicable Florida minimum wage and did not receive or retain any tips from customers.

## COMPENSATION AFTER THE TRAINING PERIOD

48. After successfully completing her training period in 2019, Plaintiff and the putative class of Servers and Bartenders were compensated at a reduced wage of $5.44 for the first forty (40) hours worked in the restaurant each week.[3] Defendants notified Plaintiff that they would be taking a tip credit under the FLSA in the amount of $3.02 per hour based on the tips received by Plaintiff during her employment in 2019.

49. In 2020, Defendants compensated Plaintiff and the putative class of Servers and Bartenders a reduced wage of $5.54 for the first forty (40) hours worked in the restaurant each week.

---

[3] On information and belief, in 2015, Servers were compensated at a reduced wage of $5.03 per hour for the first forty (40) hours worked in the restaurant each week; in 2016 and 2017, Servers were compensated at a reduced wage of $5.08 per hour for the first forty (40) hours worked in the restaurant each week; and in 2018, Servers were compensated at a reduced wage of $5.23 per hour for the first forty (40) hours worked in the restaurant each week.

Defendants notified Plaintiff that they would be taking a tip credit in the amount of $3.02 per hour based on the tips received by Plaintiff during her employment in 2020.

**DEFENDANTS REQUIRE PLAINTIFF AND SIMILARLY SITUATED SERVERS TO SPEND MORE THAN 20% OF THE LUNCH SHIFT PERFORMING NON-TIPPED DUTIES**

50. During her employment period with the Defendants, Plaintiff and members of the putative of Servers were assigned both "lunch" shifts and "dinner" shifts.

51. When working a "lunch" shift, Plaintiff and other Servers and Bartenders were often required to report to work prior to opening between 10:00am and 10:30am.

52. When working the "lunch" shift, Plaintiff and members of the putative class were frequently not permitted to clock-in using the time-keeping system when they arrived on the property.  Instead, Plaintiff and putative class members were required to attend pre-shift meetings off-the-clock without clocking-in to the time-keeping system.  These daily pre-shift meetings often lasted an *average* of approximately thirty (30) minutes.

53. Plaintiff and members of the putative class were often permitted to clock-in at 10:30 a.m. once the pre-shift meeting concluded.

54. If working a single shift on a day, Plaintiff and putative class members would be scheduled to work until approximately 5:00 pm.

55. Defendants do not open to the public until approximately 11:30 a.m. each day.  Prior to opening the restaurant, from 10:00 a.m. until 11:30 a.m. – a period of approximately one and one-half (1.5) hours – Defendants instructed Plaintiff and all other similarly situated restaurant Servers and Bartenders to slice lemons, brew coffee and/or tea, fill salt and pepper shakers, roll silverware, set tables, clean the beverage stations, set chairs, clean windows, clean tables, clean condiments, vacuum and mop the floors, pick up cigarettes

from the parking lot, and perform additional "non-tipped" duties which are merely incidental to the employees' primary duties in the restaurant. Much of this work was instructed to begin after the pre-shift meeting concluded.

56. Before completing each "lunch" shift, Plaintiff and the putative class members were required to clean dining room tables, clean the beverage stations, fill salt and pepper shakers, vacuum and clean the floors and tables, and to perform other "non-tipped" duties and responsibilities that are merely incident to the employees' primary duties.   At a minimum, these responsibilities took at least thirty (30) minutes to perform each shift but could take as much as two (2) hours on some days depending on the volume of business.

57. When Plaintiff and putative class members did not have a high volume of work during a "lunch" shift, Defendants instructed Plaintiff and the putative class members to spend their time performing additional "non-tipped" duties identified above.

58. During a typical "lunch" shift, Plaintiff and putative class members were regularly required to spend a total of *more than* 20% of the shift performing the aforementioned "not-tipped" duties and responsibilities.

59. For example, when Plaintiff arrived on the property and attended the pre-shift meeting at 10:00 a.m., she would not be permitted to clock-in until 10:30 a.m. after the pre-shift meeting concluded.  This uncompensated thirty (30) minute meeting was not "tipped" work as that term is defined under the FLSA.  Accordingly, from 10:00 a.m. through 10:30 a.m. Plaintiff was not compensated.  From 10:30 a.m. until 11:30 a.m. Plaintiff and the putative class members performed the "non-tipped" duties specified above.   From 11:30 a.m. until approximately 4:30 p.m. Plaintiff and the putative class members did perform "tipped"

duties but from 4:30 p.m. until 5:00 p.m. Plaintiff and the putative class members performed "non-tipped" duties.

60. Based upon the aforementioned calculations, at least two (2) hours out of Plaintiffs' typical seven (7) hour lunch shift were spent performing "non-tipped" duties. Accordingly, Plaintiff and the putative class members spent more than 28% of the "lunch" shift performing "non-tipped" duties.

61. Plaintiff and the putative class members were not paid the first thirty (30) minutes when they arrived for the pre-shift meetings and were only paid the reduced cash wage of $5.44 per hour in 2019 and $5.54 per hour in 2020 after the pre-shift meeting concluded. In the years 2015, 2016, 2017, and 2018, members of the putative class were compensated at the rates referenced in footnote 3.

62. As a result, Plaintiff and the putative class members are entitled to receive the $3.02 tip credit under Florida law for the two (2) hours spent each shift performing "non-tipped" incidental duties, as opposed to the reduced wage they received when performing these incidental duties.

63. Plaintiff and the federal minimum wage class members are entitled to receive at least federal minimum wage for each hour spent performing "non-tipped" incidental work during lunch shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

64. Plaintiff and the Florida minimum wage class members are entitled to receive at least applicable Florida minimum wage for each hour spent performing "non-tipped" incidental work during lunch shifts in which the "non-tipped" work exceeded 20% of the total time worked that shift.

**DEFEENDANTS REQUIRE PLAINTIFF AND SIMILARLY SITUATED
SERVERS TO SPEND MORE THAN 20% OF
THE DINNER SHIFT PERFOMRING NON-TIPPED DUTIES**

65. When working the evening "dinner" shift, Plaintiff and all other similarly situated Servers and Bartenders were to report to work at 5:00 p.m. and would be scheduled to work through 12:00 a.m.  However, when Plaintiffs and the putative class of Servers and Bartenders arrived to work for the 5:00 p.m. shift, they were frequently not permitted to clock-in using the time-keeping system for pre-shift meetings they were required to attend.  These pre-shift meetings were very similar to the pre-shift meetings in the mornings and often lasted an *average* of approximately thirty (30) minutes.

66. Plaintiff and members of the putative class were often permitted to clock-in at 5:30 p.m. once the thirty (30) minute pre-shift meeting for the "dinner" shift concluded.

67. From 5:30 p.m. until 6:00 p.m. – a period of approximately thirty (30) minutes – Defendants instructed Plaintiff and all other similarly situated restaurant Servers and Bartenders to slice lemons, brew coffee and/or tea, fill salt and pepper shakers, roll silverware, set tables, clean the beverage stations, set chairs, clean windows, clean tables, clean condiments, vacuum and mop the floors, pick up cigarettes from the parking lot, and perform additional "non-tipped" duties which are merely incidental to the employees' primary duties in the restaurant in order to prepare for the "dinner" shift. Much of this work was instructed to begin after the pre-shift meeting concluded.

68. Before completing each "dinner" shift, Plaintiff and the putative class members were required to clean dining room tables, clean the beverage stations, fill salt and pepper shakers, vacuum and clean the floors and tables, and to perform other "non-tipped" duties and responsibilities that are merely incident to the employees' primary duties.    At a

minimum, these responsibilities took at least thirty (30) minutes to perform each shift but could take as much as two (2) hours on some days depending on the volume of business.

69. When Plaintiff and putative class members did not have a high volume of work, Defendants instructed Plaintiffs and the class to spend their time performing additional "non-tipped" duties identified above.

70. During a typical "dinner" shift, Plaintiff and putative class members were regularly required to spend a total of *more than* 20% of the shift performing the aforementioned "not-tipped" duties and responsibilities.

71. For example, when Plaintiff arrived on the property at 5:00 p.m. for the pre-shift meeting, she would not be permitted to clock-in until 5:30 p.m. after the pre-shift meeting concluded. This uncompensated thirty (30) minute meeting was not "tipped" work as that term is defined under the FLSA.  From 5:00 p.m. through 5:30 p.m. Plaintiff was not compensated. From 5:30 p.m. until 6:00 p.m. Plaintiff and the putative class members performed the "non-tipped" duties specified above.    From 6:00 p.m. until approximately 11:30 p.m. Plaintiff and the putative class members did perform "tipped" duties but from 11:30 p.m. until 12:00 a.m. Plaintiff and the putative class members performed "non-tipped" closing duties.

72. Based upon the aforementioned calculations, at least one and one-half (1.5) hours out of Plaintiffs' typical seven (7) hour "dinner" shift were spent performing "non-tipped" duties. Accordingly, Plaintiff and the putative class members spent more than 21% of the "dinner" shift performing "non-tipped" duties.

73. Plaintiff and the putative class members were not paid the first thirty (30) minutes when they arrived for the pre-shift meetings and were only paid the reduced cash wage of $5.44

per hour in 2019 and $5.54 per hour in 2020 after the pre-shift meeting concluded. In the years 2015, 2016, 2017, and 2018, members of the putative class were compensated at the rates referenced in footnote 3.

74. As a result, Plaintiff and the putative class members are entitled to receive the $3.02 tip credit for the one and one half (1.5) hours spent each shift performing "non-tipped" incidental duties, as opposed to the reduced wage they received when performing these incidental duties.

75. Plaintiff and the federal minimum wage class members are entitled to receive at least federal minimum wage for each hour spent performing "non-tipped" incidental work during dinner shifts in which the "non-tipped" work exceeded 20% of the total time worked during that shift.

76. Plaintiff and the Florida minimum wage class members are entitled to receive at least applicable Florida minimum wage for each hour spent performing "non-tipped" incidental work during dinner shifts in which the "non-tipped" work exceeded 20% of the total time worked that shift.

**DEFENDANTS FAIL TO PROPERLY PAY OVERTIME WHEN FRONT-OF-THE-HOUSE SERVERS AND BARTENDERS EXCEED FORTY (40) HOURS PER WEEK**

77. Plaintiff and similarly situated Servers and Bartenders were engaged in similar duties and responsibilities on a daily basis and worked more than forty (40) hours in one or more workweeks of their employment with Defendants but were not properly compensated overtime wages during certain workweeks.

78. The additional persons who may opt-in to become party Plaintiffs in this action are Defendants' Servers and Bartenders during the previous three (3) years who suffered from the same uniform pay practices of not being properly paid federal overtime wages when required to work in excess of forty (40) hours per week.

79. Defendants failed to keep *accurate* time and pay records for Plaintiff and the putative class members as required under the FLSA.

80. Defendants acted willfully in failing to pay Plaintiff and the putative class members in accordance with federal and state law.

81. As a result of Defendants' intentional and willful failure to comply with the FLSA and FMWA, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs incurred in the prosecution of these claims.

**COUNT I – COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS**
**(80/20 VIOLATION DURING THE LUNCH SHIFT)**

82. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 81 as though set forth fully herein.

83. Plaintiff and all others similarly situated are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendants.

84. Defendants failed to compensate Plaintiff and the class members for these violations.

85. Plaintiff and the proposed class members were subjected to similar violations of federal law as a result of the Defendants' failure to reimburse the cost of uniforms and tools which drove their wages under the applicable federal minimum wage.

86. Plaintiff seeks recovery of these federal minimum wages under 29 U.S.C. § 216(b) for herself and the following class for Defendants' failure to pay federally mandated minimum wages:

> **All restaurant Servers who worked lunch shifts for Defendants at the Bokamper's located at 3115 NE 32nd Ave in Fort Lauderdale, Florida during the three (3) years preceding this lawsuit, and were required to spend more than 20% of their lunch shifts performing "non-tipped" incidental duties and did not receive the full applicable federal minimum wage for this work.**

87. Defendants willfully failed to pay Plaintiff and the putative class members the full federal minimum wage for one or more weeks of work.

88. As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the class members have been damaged in the loss of minimum wages for one or more weeks of work during the employment with Defendants.

89. Defendants' willful and/or intentional violations of entitle Plaintiff and the putative class members to an additional amount of liquidated, or double, damages.

90. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, TIMBREL NEWTON, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, P.D.K.N. HOLDINGS, LLC,  P.D.K.N. P-4, LLC, P.D.K.N. P-4, OP., LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated minimum wages to be paid by the Defendants, jointly and severally; (b) an equal amount of liquidated damages to be paid by the Defendants, jointly and severally; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA, to by paid by Defendants, jointly

and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

### COUNT II – COLLECTIVE ACTION FOR FEDERAL MINIMUM WAGE VIOLATIONS
### (80/20 VIOLATION DURING THE DINNER SHIFT)

91. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 81 as though set forth fully herein.

92. Plaintiff and all other similarly situated Servers are/were entitled to be paid full federal minimum wage for certain hours worked during their employment with Defendant.

93. Plaintiff seeks recovery of federal minimum wages under 29 U.S.C. § 216(b) for herself and the following class for Defendants' failure to pay federally mandated minimum wages:

> **All restaurant Servers who worked dinner shifts for Defendants at the Bokamper's restaurant located at 3115 NE 32nd Ave in Fort Lauderdale, Florida during the three (3) years preceding this lawsuit, and were required to spend more than 20% of their dinner shifts performing "non-tipped" incidental duties and did not receive the full applicable federal minimum wage for this work.**

94. Defendants willfully failed to pay Plaintiff and the putative class members the full federal minimum wage for one or more weeks of work.

95. As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff and the class members have been damaged in the loss of minimum wages for one or more weeks of work during the employment with Defendants.

96. Defendants' willful and/or intentional violations of entitle Plaintiff and the putative class members to an additional amount of liquidated, or double, damages.

97. As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, TIMBREL NEWTON, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, P.D.K.N. HOLDINGS, LLC, P.D.K.N. P-4, LLC, P.D.K.N. P-4, OP., LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated minimum wages to be paid by the Defendants, jointly and severally; (b) an equal amount of liquidated damages to be paid by the Defendants, jointly and severally; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA, to by paid by Defendants, jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

### COUNT III – RULE 23 CLASS ACTION FOR FLORIDA MINIMUM WAGE VIOLATIONS (80/20 VIOLATION DURING THE LUNCH SHIFT)

98. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 81 as though set forth fully herein.

99. Plaintiff and the proposed class members were subjected to similar violations of the FMWA and Florida Constitution.  Plaintiff seeks class certification under Fed. R. Civ. P. 23 of the following class for Defendants' failure to pay Florida's mandated minimum wages:

> **All restaurant Servers who worked lunch shifts for Defendants at the Bokamper's restaurant located at 3115 NE 32nd Ave in Fort Lauderdale, Florida during the five (5) years preceding this lawsuit, and were required to spend more than 20% of their lunch shifts performing "non-tipped" incidental duties and did not receive the full applicable Florida minimum wage for this work.**

### RULE 23 CLASS ALLEGATIONS

100. Plaintiff brings this FMWA claim arising from the incidental side work duties as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

101.     During the past five (5) years, Defendants availed themselves of the "tip credit" and paid all restaurant Servers a reduced wage for all hours worked during a lunch shift, notwithstanding that Servers were required to spend more than 20% of their shifts performing non-tipped duties and responsibilities.  As a result, Plaintiff, and all restaurant Servers at the Fort Lauderdale location, have been denied Florida mandated minimum wage in one or more workweeks for time spent performing "non-tipped" work.

102.     The class members are treated equally and similarly by Defendants, in that they were denied Florida's minimum wage for the "non-tipped" work they performed when such work consumed more than 20% of their lunch shift.  Plaintiff and the Florida Class members performed the same or similar job duties as Servers and were paid in an identical manner by Defendants based on Defendants' failure to compensate Plaintiff and the Florida Class members properly when more than 20% of their shifts consisted of "non-tipped" work.

103.     *Numerosity:* Defendants employed hundreds of Servers at their Fort Lauderdale location during the past five (5) years who were not paid the proper Florida minimum wage when they were required to spend more than 20% of their lunch shift performing non-tipped duties.  Given Defendants' considerable size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

104.     *Commonality:* Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff.  Such questions common to the Class include, but are not limited to the following:

(a)  Whether Plaintiff and the Class were "employees" of Defendants;

(b)  Whether Plaintiff and the Class's hours were properly recorded;

(c)  Whether Defendants violated the Florida minimum wage rights of Plaintiff and the Class under the Florida Minimum Wage Act by failing to compensate Servers the full Florida minimum wage when their non-tipped duties and work exceeded 20% of their entire shift;

(d)  Whether Defendants willfully or intentionally refused to pay Plaintiff and the Class the Florida minimum wages as required under Florida law;

(e)  Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll practices; and

(f)  The nature, extent, and measure of damages suffered by the Plaintiff and the Class based upon Defendants' conduct.

105.    *Typicality:* Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff's claims arise from the Defendants' company-wide policy of failing to pay applicable Florida minimum wage when Servers spent more than 20% of their shift performing non-tipped duties.  Plaintiff and the class members performed the same or similar job duties as Servers and were paid in an identical manner by Defendants based on Defendants' failure to compensate Plaintiff and the class members when more than 20% of their shifts consisted of "non-tipped" work.

106.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interest that might conflict with the interests of the Class.  Plaintiff is

interested in pursuing his claims against Defendants vigorously and has retained counsel competent and experienced in class and complex litigation.

107.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

108.    Defendants acted on grounds generally applicable to the Class, thereby making relief appropriate with respect to the Class as a whole.  Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the Class that would establish incompatible standards of conduct for Defendants.

109.    The identity of the Class is readily identifiable from Defendants' records.

110.    Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Class.

111.    Defendants failed to keep accurate time and pay records for Plaintiff and all class members to designate how much time was spent performing "non-tipped" work during lunch shifts.

112.     The precise size and identity of the class should be ascertainable from Defendants' business records, tax records, and/or employee or personnel records; however, Plaintiff estimates that the total number of class members exceeds 300 Servers.

113.     Plaintiff and the class members are entitled to receive at least Florida's minimum wage for each hour spent performing "non-tipped" incidental work when the "non-tipped" work exceeded 20% of their shift.

114.     In 2015, the Florida minimum wage was $8.05 per hour.

115.     In 2016, the Florida minimum wage was $8.10 per hour.

116.     In 2017, the Florida minimum wage was $8.10 per hour.

117.     In 2018, the Florida minimum wage was $8.25 per hour.

118.     In 2019, the Florida minimum wage was $8.46 per hour.

119.     In 2020, the Florida minimum wage is $8.56 per hour.

120.     The additional persons whom may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and whom suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked.

121.     Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand letter as required by Florida law before asserting this claim.

122.     More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff for the minimum wage damages owed.

123.     Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wage for the "non-tipped" work they performed and were subject to the same pay policies.

124.     Defendants were aware of the requirements of the FMWA and Fla. Const. Art. X Section 24, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the class members in accordance with the law.

125.     A class action suit, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.  The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

126.     A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of their violations of the FMWA and Florida Constitution.

127.     Furthermore, even if every member of the class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.  Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

128.     The relief sought is common to the entire class including, inter alia:

(a) Payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Constitution;

(b) Payment by the Defendants of liquidated damages caused by their willful and/or intentional failure to pay minimum wages pursuant to the Florida Constitution;

(c) Payment by the Defendants of the costs and expenses of this action, including Counsel for Plaintiff's attorney's fees and costs

129.    As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, TIMBREL NEWTON, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, P.D.K.N. HOLDINGS, LLC, P.D.K.N. P-4, LLC, P.D.K.N. P-4, OP., LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated state minimum wages to be paid by the Defendants, jointly and severally; (b) an equal amount of liquidated damages to be paid by the Defendants, jointly and severally; (c) all reasonable attorney's fees and costs as permitted under Florida law, to be paid by Defendants, jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

### COUNT IV – RULE 23 CLASS ACTION FOR FLORIDA MINIMUM WAGE VIOLATIONS (80/20 VIOLATION DURING THE DINNER SHIFT)

130.    Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 81 as though set forth fully herein.

131.    Plaintiff and the proposed class members were subjected to similar violations of the FMWA and Florida Constitution.  Plaintiff seeks class certification under Fed. R. Civ. P. 23 of the following class for Defendants' failure to pay Florida's mandated minimum wages:

> **All restaurant Servers who worked dinner shifts for Defendants at the Bokamper's restaurant located at 3115 NE 32nd Ave in Fort Lauderdale, Florida during the five (5) years preceding this lawsuit, and were required to spend more than 20% of their dinner shifts performing "non-tipped" incidental duties and did not receive the full applicable Florida minimum wage for this work.**

## RULE 23 CLASS ALLEGATIONS

132.    Plaintiff brings this FMWA claim arising from the incidental side work duties as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

133.    During the past five (5) years, Defendants availed themselves of the "tip credit" and paid all restaurant Servers a reduced wage for all hours worked during a dinner shift, notwithstanding that Servers were required to spend more than 20% of their shifts performing non-tipped duties and responsibilities.  As a result, Plaintiff, and all restaurant Servers at the Fort Lauderdale location, have been denied Florida mandated minimum wage in one or more workweeks for time spent performing "non-tipped" work.

134.    The class members are treated equally and similarly by Defendants, in that they were denied Florida's minimum wage for the "non-tipped" work they performed when such work consumed more than 20% of their dinner shift.  Plaintiff and the Florida Class members performed the same or similar job duties as Servers and were paid in an identical manner by Defendants based on Defendants' failure to compensate Plaintiff and the Florida Class members properly when more than 20% of their shifts consisted of "non-tipped" work.

135.    *Numerosity:* Defendants employed hundreds of Servers at their Fort Lauderdale location during the past five (5) years who were not paid the proper Florida minimum wage when they were required to spend more than 20% of their dinner shift performing non-

tipped duties.  Given Defendants' considerable size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

136.     *Commonality:* Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff.  Such questions common to the Class include, but are not limited to the following:

(g)  Whether Plaintiff and the Class were "employees" of Defendants;

(h)  Whether Plaintiff and the Class's hours were properly recorded;

(i)  Whether Defendants violated the Florida minimum wage rights of Plaintiff and the Class under the Florida Minimum Wage Act by failing to compensate Servers the full Florida minimum wage when their non-tipped duties and work exceeded 20% of their entire shift;

(j)  Whether Defendants willfully or intentionally refused to pay Plaintiff and the Class the Florida minimum wages as required under Florida law;

(k)  Whether Defendants knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll practices; and

(l)  The nature, extent, and measure of damages suffered by the Plaintiff and the Class based upon Defendants' conduct.

137.     *Typicality:* Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff's claims arise from the Defendants' company-wide policy of failing to pay applicable Florida minimum wage when Servers spent more than 20% of their dinner shift

performing non-tipped duties.  Plaintiff and the class members performed the same or similar job duties as Servers and were paid in an identical manner by Defendants based on Defendants' failure to compensate Plaintiff and the class members when more than 20% of their shifts consisted of "non-tipped" work.

138.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interest that might conflict with the interests of the Class.  Plaintiff is interested in pursuing his claims against Defendants vigorously and has retained counsel competent and experienced in class and complex litigation.

139.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

140.    Defendants acted on grounds generally applicable to the Class, thereby making relief appropriate with respect to the Class as a whole.  Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the Class that would establish incompatible standards of conduct for Defendants.

141.    The identity of the Class is readily identifiable from Defendants' records.

142.     Without a class action, Defendants will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Class.

143.     Defendants failed to keep accurate time and pay records for Plaintiff and all class members to designate how much time was spent performing "non-tipped" work during dinner shifts.

144.     The precise size and identity of the class should be ascertainable from Defendants' business records, tax records, and/or employee or personnel records; however, Plaintiff estimates that the total number of class members exceeds 300 Servers.

145.     Plaintiff and the class members are entitled to receive at least Florida's minimum wage for each hour spent performing "non-tipped" incidental work when the "non-tipped" work exceeded 20% of their shift.

146.     In 2015, the Florida minimum wage was $8.05 per hour.

147.     In 2016, the Florida minimum wage was $8.10 per hour.

148.     In 2017, the Florida minimum wage was $8.10 per hour.

149.     In 2018, the Florida minimum wage was $8.25 per hour.

150.     In 2019, the Florida minimum wage was $8.46 per hour.

151.     In 2020, the Florida minimum wage is $8.56 per hour.

152.     The additional persons whom may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and whom suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked.

153.     Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendants a Florida minimum wage demand letter as required by Florida law before asserting this claim.

154.     More than fifteen (15) calendar days have passed since Defendants received the Florida minimum wage demand letter and no payment has been tendered by Defendants to compensate Plaintiff for the minimum wage damages owed.

155.     Class members are treated equally and similarly by Defendants, in that they were denied full and proper Florida minimum wage for the "non-tipped" work they performed and were subject to the same pay policies.

156.     Defendants were aware of the requirements of the FMWA and Fla. Const. Art. X Section 24, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the class members in accordance with the law.

157.     A class action suit, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.  The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

158.     A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendants will retain the proceeds of their violations of the FMWA and Florida Constitution.

159.     Furthermore, even if every member of the class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.  Concentrating

the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

160.     The relief sought is common to the entire class including, inter alia:

(d) Payment by the Defendants of actual damages caused by their failure to pay minimum wages pursuant to the Florida Constitution;

(e) Payment by the Defendants of liquidated damages caused by their willful and/or intentional failure to pay minimum wages pursuant to the Florida Constitution;

(f) Payment by the Defendants of the costs and expenses of this action, including Counsel for Plaintiff's attorney's fees and costs

161.     As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, TIMBREL NEWTON, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, P.D.K.N. HOLDINGS, LLC, P.D.K.N. P-4, LLC, P.D.K.N. P-4, OP., LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated state minimum wages to be paid by the Defendants, jointly and severally; (b) an equal amount of liquidated damages to be paid by the Defendants, jointly and severally; (c) all reasonable attorney's fees and costs as permitted under Florida law, to be paid by Defendants, jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## COUNT V – FEDERAL OVERTIME VIOLATIONS – 29 U.S.C. § 207 (RESTAURANT SERVERS AND BARTENDERS)

162.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 81 as though set forth fully herein.

163.     Plaintiff alleges this count pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216(b)*.

164.     During the three (3) years preceding the filing of this lawsuit, Plaintiff and other restaurant Servers and Bartenders were required to work in excess of forty (40) hours in one or more workweeks for Defendants.

165.     Plaintiff claims federal overtime wages for all of the hours she and other members of the putative class worked in excess of forty (40) per week during the past three (3) years.

166.     Defendants failed to properly compensate Plaintiff and members of the putative class when they worked in excess of forty (40) hours in a workweek.

167.     Defendants recklessly failed to investigate whether Defendants' payroll practices were in accordance with the FLSA during the relevant time period.

168.     Defendants willfully and intentionally refused to pay Plaintiff and members of the putative class the applicable federal overtime wages as required by the FLSA, as Defendants knew or should have known of the overtime wage requirements of the FLSA.

169.     Because Defendants have committed intentional and/or willful violations of the FLSA, the application statute of limitations should be three (3) years as opposed to two (2) years.

170.     Plaintiff intends to seek conditional certification under 29 U.S.C. § 216(b) for herself and the following class because of Defendants' failure to pay federally mandated overtime wages:

> **All front-of-the-house restaurant Servers *and* Bartenders who worked for Defendants at the Bokampers Sports Bar & Grill located at 3115 NE 32nd Ave, Fort Lauderdale, FL 33308 during the three (3) years preceding this lawsuit, and who were not paid federally mandated overtime wages when they worked in excess of forty (40) hours per week.**

171.    Defendants' willful and/or intentional violations of the FLSA entitled Plaintiff and the putative class of Servers and Bartenders to an additional amount of liquidated, or double, damages.

172.    As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs incurred in the prosecution of these claims.

WHEREFORE, Plaintiff, TIMBREL NEWTON, respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, P.D.K.N. HOLDINGS, LLC, P.D.K.N. P-4, LLC, P.D.K.N. P-4, OP., LLC, and award Plaintiff, and all others similarly situated: (a) unliquidated overtime wages to be paid by the Defendants, jointly and severally; (b) an equal amount of liquidated damages to be paid by the Defendants, jointly and severally; (c) all reasonable attorney's fees and costs as permitted under federal law, to be paid by Defendants, jointly and severally; and any and all such further relief as this Court deems just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, TIMBREL NEWTON, requests and demands a trial by jury on all appropriate claims.

**Dated this 28th day of August 2020.**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-**
**JORDAN RICHARDS, PLLC**
805 E. Broward Blvd. Suite 301
Fort Lauderdale, Florida 33301
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
Jordan@jordanrichardspllc.com
Melissa@jordanrichardspllc.com
Jake@jordanrichardspllc.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on August 28,

2020.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST: